**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff(s),**　　　　**CASE NUMBER: 04-80372
　　　　　　　　　　　　　　　　　HONORABLE VICTORIA A. ROBERTS**

v.

**D-1 CARL MARLINGA,**

        **Defendant(s).**
_____/

**ORDER**

This matter is before the Court on Defendant's objection to the Government's request to admit testimony Defendant asserts is inadmissible hearsay. The Government contends that the testimony is admissible under FRE 801(d)(2)(E) as a statement by a co-conspirator. On September 14, 2006, the Court held an evidentiary hearing and the Government offered a proffer of the expected testimony. For the reasons stated below, Defendant's objection is SUSTAINED.

FRE 801(d)(2)(E) states:

    (d)    Statements which are not hearsay. A statement is not hearsay if--

            * * *

    (2)    Admission by party-opponent. The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

1

"There are three foundational prerequisites which must be established to admit a coconspirator's statements under Rule 801(d)(2)(E): that a conspiracy existed; that defendant was a member of the conspiracy; and that the declarant's statement was made during the course and in furtherance of the conspiracy." *United States v Breitkreutz*, 977 F.2d 214, 218 (6th Cir. 1992). "These preliminary matters are findings of fact to be made by the district court pursuant to Fed. R. Evid. 104(a)." *Id*. The proofs must be established by a preponderance of the evidence. *Id*.

The Government seeks to admit a statement by Dennis Johnston, attorney for Hulet (and later Moldowan), that he allegedly made on March 26, 2003, during a pretrial conference with the Macomb County judge presiding over *People v Hulet*. Also attending was Kimberly Mitseff, one of two Macomb County Assistant Prosecutors assigned to the case.[1] The Government proffers that Mitseff will testify that Johnston said something to the effect that he "had a deal" with Defendant that Hulet would not get jail time.

The Government contends that this statement is relevant to the bribery charge in Count II, and that it is not hearsay because it is the statement of a co-conspirator. Defendant objects on two grounds: 1) the government failed to prove that there was a conspiracy, or 2) alternatively, that Defendant abandoned the conspiracy before the alleged statement was made.

The conspiracy alleged by the Government is that Defendant and Johnston agreed that Defendant would receive campaign contributions in exchange for a

---

[1]The second Assistant Prosecutor was Nida Samone.

probationary sentence for Hulet.

As proof that the conspiracy existed, the Government proffers that:

    a.    Between December 2001 and August 2002, Johnston made $25,000 or $26,000 in contributions to Defendant's campaign during the same time he was negotiating with Defendant about settlement of the civil and criminal cases pending against Hulet.

    b.    Johnston's donations, which were given in his and others' names, actually came from Hulet.

    c.    When the amount Johnston could give in his name exceeded the federal statutory limits, Johnston either falsely represented that they were made by others or he made the donations to other organizations,[2] which would make a donation in the same amount to Defendant's campaign, all at Defendant's direction.

    d.    On December 11, 2001, the day after Johnston made the first $10,000 donation, Defendant met with Johnston's partner/co-counsel, Robert Leithauser,[3] and discussed Hulet.

    e.    In February 2002 (and sometime again in the summer of 2002), Defendant met with Johnston and Leithauser and they solicited Defendant's support in settling the civil and criminal cases against Hulet. Defendant responded by stating that he would not oppose a joint settlement of the civil and criminal cases if the victim, police and trial judge were not opposed.

    f.    In June 2002, Defendant requested additional campaign contributions from Johnston. Johnston gave $5,000.

    g.    In August 2002, Defendant requested additional campaign contributions from Johnston. Johnston gave $10,000.

    h.    In April 2003, Johnston filed a Motion for Specific Performance requesting enforcement of the alleged plea agreement he referenced during the March 26, 2003 pretrial conference.

---

[2] Friends of Jim Barcia and the Michigan Democratic Party.

[3] The parties do not actually state Leithauser's relationship to the Hulet case. The Court gathers from the proffered evidence that he is either Johnston's legal partner or co-counsel.

Johnston later withdrew the motion.

The Government admits that there is no direct evidence that Defendant asked for the donations from Johnston in exchange for a resolution in *Hulet*. But, it contends that an inference can be made that Defendant and Johnston had such an agreement based on: 1) the temporal proximity of the donations and discussions/negotiations about Hulet, 2) the fact that Defendant allegedly did not advise his assistants about the discussions/negotiations, and 3) the surreptitious manner in which Defendant allegedly directed Johnston to structure the donation.

Defendant asserts that the Government misrepresented the expected evidence in two respects. Defendant says that he actually testified before the Grand Jury that he did not remember whether he discussed Hulet with Leithauser during their December 2001 meeting. And, contrary to the Government's claim that he did not disclose his negotiations with his assistants, Mitseff will testify about two meetings with Marlinga on the subject. In March 2002, after Defendant's February 2002 meeting with Johnston and Leithauser, Defendant met with Mitseff and asked her position on settlement. And, sometime before March 7, 2003, Defendant briefly participated in a second meeting on the subject with Mitseff, Johnston and another prosecutor. Per Defendant, the evidence will show that no agreement was reached at the conclusion of either meeting, because Mitseff was opposed.

Additionally, the Government agrees that Mitseff will testify that Defendant recused himself from any involvement in the Hulet case no later than March 7, 2003. And, Defendant presents an investigation report by FBI Agents Ronald Loch and David Kelly summarizing their interviews with Johnston about Defendant. During one meeting,

4

the agents report that Johnston said that he only filed the motion for specific performance to "prompt a response" from Defendant to plead out the Hulet case.

The Court finds that the Government failed to establish, by a preponderance, any of the necessary elements to admit Johnston's statement under FRE 801(d)(2)(E).

### A. Was there a Conspiracy?

"A conspiracy exists where two or more people agree to accomplish an unlawful purpose by concerted action." *United States v Shepard,* 89 F.Supp. 2d 884, 887 (W.D. Mich. 1999)(*citing United States v Hutto*, 256 U.S. 524, 528-529 (1921). "The hallmark of a conspiracy is the agreement between the parties." *Id* (*citing Braverman v United States*, 317 U.S. 49, 53 (1942) *See also United States v Ledezma*, 26 F.3d 636, 640 (6th Cir. 1994). Proof of a formal agreement is not necessary. *Ledezma*, 26 F.3d at 640. "[A] tacit or material understanding among the parties is sufficient[.]" *United States v Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985).

The Government admits that there is no direct evidence that Defendant and Johnston agreed that Defendant would receive campaign contributions in exchange for a probationary sentence for Hulet. The Government also failed to present evidence from which such an agreement could be inferred.

Defendant does not deny accepting and soliciting donations from Johnston, and there is evidence that he directed Johnston to structure them in a manner that misrepresented that Johnston was the donor. However, there is no evidence that Defendant was or should have been aware that the donations purportedly from

5

Johnston were actually from Hulet. Nor is there any evidence that Defendant knew or agreed that the donations were given with the expectation that Defendant would ensure that Hulet would receive probation in his criminal case.

The Government contends that the Court can infer Defendant's knowledge of the true source of the donations and the purpose for which they were given: 1) from the proximity in time between the donations and Defendant's discussions with Johnston about Hulet; 2) from the fact that Defendant did not disclose the negotiations with his assistants; and 3) because of the deceptive way the donations were structured.

However, the Government admits that it was not improper (absent a *quid pro quo* agreement) for Defendant to solicit or accept donations from Johnston, even while the Hulet case was pending. Therefore, the timing of the donations reveals nothing about Defendant and Johnston's understanding about the purpose for which they were given.

Second, Defendant presented evidence that he had at least two discussions with Mitseff about Johnston's request that the Macomb County Prosecutor's Office agree to a joint settlement of the civil and criminal cases. This refutes the Government's claim that Defendant concealed his negotiations with Johnston.

Finally, Defendant's alleged direction to Johnston to structure his donations to conceal that Johnston was giving more than allowed under federal statutes at best suggests an attempt to conceal violation of campaign finance laws.

The timing of the donations and the manner in which they were structured does not individually or collectively give rise to an inference that Defendant and Johnston ever had a mutual understanding that the donations were given in exchange for probation for Hulet. Thus, the Government failed to establish that a conspiracy existed.

For the same reasons, the Government also failed to establish the second element--that Defendant was a member of the conspiracy at the time the alleged statement was made.

### B. Was Johnston's Statement Made During the Course and in Furtherance of the Conspiracy?

Even if the evidence presented was sufficient to prove that a conspiracy existed between Defendant and Johnston, the Government failed to establish that Johnston's statement was made during the course, or in the furtherance, of the conspiracy.

The Government admits that Defendant affirmatively recused himself from further involvement in the Hulet case no later than March 7, 2003, which precluded Defendant from having any effect on Hulet's sentence. The Government further admits that Johnston's statement regarding their alleged deal was made several weeks later, on March 26, 2003. Therefore, to the extent a conspiracy ever existed, it is undisputed that Defendant withdrew from it before Johnston made his statement.

The Supreme Court in *Krulewitch v United States*, 336 U.S. 440, 442 (1949), held that statements of a co-conspirator which are made after the objectives of the conspiracy fail or have been achieved cannot be deemed to have been made pursuant to or in furtherance of the conspiracy. Consequently, such declarations are not admissible under FRE 801(d)(2)(E).

The Government asserts that, despite Defendant's public withdrawal from the *Hulet* case, the conspiracy continued because the manner in which the donations were structured did not become known to law enforcement until sometime after Johnston's statement. The Government contends that Defendant's failure to disclose the structure

7

of the donations extended the life of the conspiracy until his alleged complicity was discovered by law enforcement. Therefore, the Government contends that Johnston's statement was in furtherance of the conspiracy and is admissible.

There is no merit to the Government's assertion. The very case the Government relies upon, *United States v Howard*, 770 F.2d 57, 60 (6th Cir. 1985), held that avoidance of detection only furthers a conspiracy if its main objectives have not been achieved or abandoned. "[A]n agreement to conceal a completed crime does not extend the life of a conspiracy." *Id*.

*Krulewitch* is controlling. The timing of Johnston's statement precludes a finding that it was made in furtherance of the conspiracy.

For all of these reasons, Defendant's objection to the admission of Johnston's statement under FRE 801(d)(2)(E) is SUSTAINED.

**IT IS SO ORDERED.**

                                                 s/Victoria A. Roberts
                                                 Victoria A. Roberts
                                                 United States District Judge

Dated: September 15, 2006

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 15, 2006.
>
> s/Linda Vertriest
> Deputy Clerk